Argued and submitted July 22, reversed and remanded September 11, 2002

# DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT,
*Petitioner,*

*and*

# FRIENDS OF YAMHILL COUNTY,
*Intervenor-petitioner below,*

*v.*

# YAMHILL COUNTY,
*Respondent.*

2002-011; A118286

53 P3d 462

Steven E. Shipsey, Assistant Attorney General, argued the cause for petitioner. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

Rick Sanai argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

■    The Department of Land Conservation and Development (DLCD) petitions for judicial review of an order of the Land Use Board of Appeals (LUBA). The issue on review is whether LUBA erred in holding that a local government can take an exception to a statewide planning goal to allow a use that could be allowed under that goal. In particular, did LUBA err in holding that respondent Yamhill County could properly take an exception to Statewide Planning Goal 3 to rezone a 10-acre parcel of land from exclusive farm use (EF-80) to Agriculture/Forestry Small Holding (AF-10), so as to allow the construction of a nonfarm dwelling on that parcel? As explained below, we agree with DLCD that LUBA erred in so holding. Consequently, we reverse and remand to LUBA with instructions to remand to the county for denial of the application.

We review LUBA's conclusion for errors of law. ORS 197.850(9). The relevant facts are not in dispute. The property in question is an undeveloped 10-acre parcel in Yamhill County that is zoned for exclusive farm use. It is bordered on three sides by property with the same zoning. It is bordered on one side by properties zoned rural residential. The property is steeply sloped and, according to the county's findings in support of the zone change, has soil that is unsuitable for agriculture. The soil conditions also preclude productive forest uses. A potential purchaser of the parcel sought approval of a comprehensive plan map amendment and zone change in order to build a single-family dwelling on the parcel.

The county approved the amendment and zone change, taking an exception to Statewide Planning Goal 3, which pertains to use of agricultural lands. The county also noted, however, that an alternative method to establish a dwelling on the parcel "is through a nonfarm dwelling process. Although the applicant has chosen the Plan Amendment and Zone Change application, the soils on the property indicate that the nonfarm dwelling application may be appropriate."

DLCD petitioned LUBA for review of the county's decision. It argued, as pertinent here, that a local government cannot take an exception to a statewide planning goal to allow a use that is allowable under the relevant statewide planning goal. It pointed out that the applicant could have applied to build a nonfarm dwelling on the property and obtained the same result without any exception to Goal 3 being taken and the property being rezoned. LUBA rejected DLCD's argument:

> "The standards for approving a nonfarm dwelling are very strict, and frequently may not be satisfied. ORS 215.284; OAR 660-033-0130(4). The possibility that the subject property might satisfy those standards is speculative. We see no requirement in OAR 660-004-0000(2) [concerning the Goal 2 exception process] or elsewhere that requires the applicant to exhaust every potential alternative means to obtain approval for a dwelling in an agricultural zone before applying for an exception to Goal 3 to allow agricultural land to be rezoned for rural residential use." *DLCD v. Yamhill County*, 42 Or LUBA 126, ____ (2002).

Notwithstanding that conclusion, LUBA ultimately remanded to the county for further consideration because the county's findings inexplicably reflected that numerous criteria for taking an exception had *not*, in fact, been met.

DLCD petitioned for review of the above-quoted aspect of LUBA's decision, arguing that LUBA erred in determining that a local government can take an exception to a statewide planning goal to allow a use that is, in fact, allowable under the relevant planning goal. We agree with DLCD.

A county's decision to amend its comprehensive plan to make a zone change such as the one at issue here must comply with applicable Statewide Planning Goals. ORS 197.175(2)(a). It is undisputed that the county correctly determined that Goal 3 is applicable to the zone change at issue here because the property in question is zoned for agricultural use. Goal 3 provides:

> "Agricultural lands *shall* be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space and with the

state's agricultural land use policy expressed in ORS 215.243 and 215.700." (Emphasis added.)

ORS 215.243(4) expresses the state's land use policy as pertinent to agricultural lands and specifically notes that "[e]xclusive farm use zoning as provided by law substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones." ORS 215.700 and ORS 215.824 both make provisions for building nonfarm dwellings on land zoned for agricultural uses. Such nonfarm dwelling use of land zoned for exclusive farm use does not require that an exception be taken from Goal 3 because Goal 3 specifically provides for nonfarm dwellings on agricultural lands. *See also* OAR 660-004-0010(1)(a) ("an exception to Goal 3 'Agricultural Lands' is not required for any of the farm or nonfarm uses permitted in an exclusive farm use (EFU) zone under ORS Chapter 215").

Goal 2 allows local governments to adopt exceptions to other Statewide Planning Goals under several circumstances. Here, the county relied on Goal 2, which allows an exception to be taken when the following criteria are satisfied:

"(1)  Reasons justify why the state policy embodied in the applicable goals should not apply;

"(2)  Areas which do not require a new exception cannot reasonably accommodate the use;

"(3)  The long-term environmental, economic, social and energy consequences resulting from the use of the proposed site with measures designed to reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(4)  The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

*See also* ORS 197.732 (containing essentially identical provisions concerning when an exception to a goal may be taken).

■    OAR 660-004-0000(2) provides:

"An exception is a decision to exclude certain land from the requirements of one or more applicable statewide goals in accordance with the process specified in Goal 2, Part II, Exceptions. The documentation for an exception must be set forth in a local government's comprehensive plan. Such documentation must support a conclusion that the standards for an exception have been met. *The conclusion shall be based on findings of fact supported* by substantial evidence in the record of the local proceeding and *by a statement of reasons which explain why the proposed use* **not allowed by the applicable goal** should be provided for. The exceptions process is not to be used to indicate that a jurisdiction disagrees with a goal." (Emphasis and boldface added.)

No issue is presented here as to the validity of OAR 660-004-0000(2). The sole question presented concerns whether LUBA's interpretation of the rule—that a local government can take an exception to provide for a proposed use even if that use could occur without taking an exception—is correct. We agree with DLCD that it is not.

The county suggests that "proposed use not allowed by the applicable goal" refers only to proposed uses that are permitted *outright* and, because the nonfarm dwelling that the applicant wishes to build is not permitted outright in an EFU zone, it is not a use that is "allowed" by Goal 3 as that term is used in OAR 660-004-0000(2). Although that reading is superficially textually plausible, it cannot be reconciled with the rule's statutory and regulatory context. That context demonstrates that the exceptions process is not designed to allow plan amendments and zone changes in order to permit uses that are, in fact, allowed by the applicable goals. In particular, Goal 2's definition of "exception" provides, in part, that an exception is something that "[d]oes *not* comply with some or all goal requirements applicable to the subject properties or situations[.]" (Emphasis added.) Conversely, as pertinent here, Goal 3 *allows* for nonfarm dwelling uses on agricultural lands, and no exception need be taken to build a nonfarm dwelling on agricultural lands. OAR 660-004-0010(1)(a).

In sum, there is no basis in either the relevant statutes or the rules from which to conclude that a "use not allowed by the applicable goal," ORS 660-004-0000(2), includes uses that specifically *are* permitted by the applicable goal under some circumstances. Rather, a use that is permitted under the applicable goal must conform to the requirements of the goal. It is only when a use is *not* permitted at all under the applicable goal that the exceptions process may come into play.

LUBA, for its part, framed the issue, in essence, as whether there should be some sort of exhaustion requirement—that is, that an applicant must first fail to qualify for a nonfarm dwelling under Goal 3 and the various statutory provisions pertaining to nonfarm dwellings before being able to utilize the exceptions process to rezone the property and build the dwelling. That approach misperceives the proper function of the exception process. The operative principle is not "exhaustion—*i.e.*, whether an application for a particular use has been approved or denied—but whether the *type of use* is allowed under the pertinent goal. Here, the property at issue is subject to Goal 3. Goal 3 allows nonfarm dwellings to be built under certain circumstances specified in ORS chapter 215. If an applicant wishes to build a nonfarm dwelling on property subject to Goal 3, then the applicant must satisfy the criteria set forth in one of the relevant provisions of ORS chapter 215. The applicant does not have the option of building that dwelling on that property through the exceptions process and rezoning if the applicant fails to satisfy the criteria of ORS chapter 215. That is so because the *type* of use in question—the use of the property for a nonfarm dwelling in this case—*is* permitted under the relevant goal.

We conclude that LUBA erred in determining that the exceptions process was available under the circumstances present here. We therefore reverse and remand to LUBA with instructions to remand to the county for denial of the application.

Reversed and remanded.